UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 94-60038
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SERGIO MENDIOLA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

(December 29, 1994)

Before DAVIS, BARKSDALE, and STEWART, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Sergio Mendiola appeals his sentence for escape from federal
custody (halfway house in Texas), contending that Sentencing
Guidelines § 2P1.1(b)(3) (prescribed offense level reduction not
given if the defendant, while on escape, committed "offense
punishable by a term of imprisonment of one year or more") violates
equal protection, on the basis that there is no rational reason to
treat persons convicted for driving while intoxicated in Texas (as
he was, while absent from the halfway house), where the offense is
punishable by up to two years in jail, more harshly than persons
convicted for the same offense in States where the maximum penalty
is less than one year.  Likewise, he asserts that the subsection
violates due process, on the basis that it requires district courts

to rely on unreliable information, without permitting correction of unreliable uses of maximum theoretical sentences.[1]  We **AFFIRM.**

---

[1]    The Government moved to dismiss the appeal, based on provisions in the plea agreement providing for a waiver of the right to appeal.  Mendiola contends that he did not agree to the waiver, pointing out that a portion of the waiver provision in the plea agreement was struck through.  It goes without saying that we have a "strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration." *County Court of Ulster County v. Allen*, 442 U.S. 140, 154 (1979); *see also* *Three Affiliated Tribes v. Wold Eng'g*, 467 U.S. 138, 157-58 (1984) (the "responsibility to avoid unnecessary constitutional adjudication" is "a fundamental rule of judicial restraint").  Here, however, we consider it preferable to bypass the waiver issue and reach the merits. *See* *Sojourner T v. Edwards*, 974 F.2d 27, 30 (5th Cir. 1992) (facts and procedural posture of case do not warrant application of jurisprudential principle that "if a case can be decided either on statutory or constitutional law, we should address the statutory issue first"), *cert. denied*, ___ U.S. ___, 113 S. Ct. 1414 (1993).  Although "[t]he right to appeal is a statutory right, not a constitutional right", *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992), it nevertheless "is a right which is fundamental to the concept of due process of law", and therefore has constitutional implications. *See* *Arrastia v. United States*, 455 F.2d 736, 739 (5th Cir. 1972).  Accordingly, by addressing the merits, we do no great violence to the rule of avoiding the unnecessary decision of constitutional issues.

    Even if we were to address the waiver issue, it is most arguable that it would not be possible to dismiss the appeal on that basis, and therefore avoid decision of the constitutional issues, in view of the conflicting evidence on whether Mendiola knowingly and voluntarily waived his right to appeal his sentence.  Examples of the conflicting evidence follow.  Although one waiver provision in the plea agreement was struck through, other similar language was not.  At rearraignment, the district court asked Mendiola whether he understood that he was "waiving the right to appeal", but did not specify that this included appeal of the sentence; defense counsel, however, made no attempt to clarify the waiver provisions of the plea agreement.  And, in an affidavit submitted in response to the Government's motion to dismiss, defense counsel stated that the plea agreement was drafted by the Government and presented at rearraignment; that the waiver question was not discussed during the plea negotiations; and that it was the regular practice of the Federal Public Defender's Office and the United States Attorney's Office to remove language concerning waiver from computerized plea agreement forms prepared by the Government.

I.

In April 1991, after a weekend pass, Mendiola failed to return to the halfway house where he was completing a federal sentence. In 1993, while still absent, he was arrested and convicted in Texas for driving while intoxicated. Later in 1993, he was arrested for not returning to the halfway house; pleaded guilty to escaping from federal custody, in violation of 18 U.S.C. § 751(a); and was sentenced to 24 months imprisonment.

II.

Mendiola contends that Guidelines § 2P1.1(b)(3) violates equal protection and due process.[2] Section 2P1.1(a) (Escape, Instigating

---

[2] Although minimally, the constitutional issues were preserved for appeal. Mendiola filed the following objection to the Presentence Investigation Report:

> Defendant objects to paragraph 12, and 19, because escape was from a "half-way house." Section 2P1.1(b)(3) requires a four point reduction in the offense level. The total offense level should be 7.

As a result, the following colloquy took place at sentencing:

> MR. WILDE [Defense Counsel]: Your Honor, there are two points I believe that Mr. Mendiola would like for me to make .... One, is that DWI currently carries up to two years in the State of Texas but it doesn't in all states .... If this had happened in another state, he would not be looking at --
>
> THE COURT: Did this happen in Texas?
>
> MR. WILDE: Yes, Your Honor. He was convicted on October 1, 1993.
>
> THE COURT: I would think it would apply to Texas. Anyway, the Court is going to so rule and you will preserve your exception.

or Assisting Escape) provides a base offense level.[3]  Subsection (b) provides for adjustments to that level based on specific offense characteristics.  The subsection in issue, 2P1.1(b)(3), provides:

> If the defendant escaped from the non-secure custody of a community corrections center, community treatment center, "halfway house," or similar facility, and subsection (b)(2) is not applicable, decrease the offense level under subsection (a)(1) by **4** levels or the offense level under subsection (a)(2) by **2** levels.  *Provided*, however, that this reduction shall not apply if the defendant, while away from the facility, committed

---

Do you have any other objection, Mr. Wilde?

MR. WILDE:  No, Your Honor.

"[O]ne of the obvious, and most salutary, purposes of the plain error rule `is to enforce the requirement that parties object to errors at trial in a timely manner so as to provide the trial judge an opportunity to avoid or correct any error ....'" ***United States v. Rodriguez***, 15 F.3d 408, 417 (5th Cir. 1994) (quoting ***United States v. Chaney***, 662 F.2d 1148, 1151 n.4 (5th Cir. 1981)).  That purpose was served here.  The essential substance of the objection is obvious and was made known to the district court.  The record suggests that the district court ruled on it before counsel had an opportunity to explain it fully.  From the context of the objection and ruling, counsel was entitled to believe that further explanation would not be welcomed or entertained by the district court.  Under these circumstances, the objection was adequate to preserve the issues for review. *See* ***United States v. Bernal***, 814 F.2d 175, 182-83 (5th Cir. 1987) (objection minimally adequate where district court cut off objection in midsentence, was aware of basis of objection, and indicated its desire to hear no more); *cf*. ***United States v. Greenwood***, 974 F.2d 1449, 1471 n.23 (5th Cir. 1992) (where district court had already ruled on identical issue, further objection by Government would have been futile and thus was not required), *cert. denied*, ___ U.S. ___, 113 S. Ct. 2354 (1993); Fed. R. Crim. P. 51 ("if a party has no opportunity to object to a ruling or order, the absence of an objection does not thereafter prejudice that party").

[3]   Under § 2P1.1(a), the base offense level is "**13**, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense", U.S.S.G. § 2P1.1(a)(1); "**8**, otherwise."  U.S.S.G. § 2P1.1(a)(2).

- 4 -

> any federal, state, or local offense punishable by
> a term of imprisonment of one year or more.

U.S.S.G. § 2P1.1(b)(3) (emphasis in original). The district court held that Mendiola was not entitled to the reduction because, while "away from" the halfway house, he was convicted for driving while intoxicated, punishable under Texas law by a term of imprisonment greater than one year.

### A.

The four-point reduction is not available if the offense while away from the facility was "punishable by a term of imprisonment of one year or more." U.S.S.G. § 2P1.1(b)(3). Mendiola points out that, although drunk driving is punishable in Texas by up to two years in jail, the maximum possible sentence for the same offense in other States is generally less than one year; moreover, he received a sentence of only 60 days. Therefore, he contends that § 2P1.1(b)(3) violates equal protection,[4] claiming that there is no rational reason to treat persons convicted of drunk driving in Texas more harshly than those convicted for the same crime in States for which the maximum sentence is less than a year.[5]

---

[4] The Fifth Amendment due process clause prohibits classifications that would be invalid under the Fourteenth Amendment's equal protection clause if practiced by a State. *See* ***Johnson v. Robison***, 415 U.S. 361, 364 n.4 [94 S. Ct. 1160] (1974).

[5] Mendiola suggests that, because a defendant convicted of drunk driving in Texas cannot be imprisoned in the penitentiary except upon the third conviction, we can avoid addressing the constitutional issue by interpreting the exception to apply to incarceration only in the state penitentiary, not in jail. We decline to adopt this interpretation. The Guideline refers only to a "term of imprisonment", making no distinction between a penitentiary and a jail. U.S.S.G. § 2P1.1(b)(3).

Mendiola acknowledges that rational basis review applies; we "seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose." *Plyler v. Doe*, 457 U.S. 202, 216 (1982).[6]

At oral argument, Mendiola conceded that there is a legitimate governmental purpose in denying offense level reductions to defendants who commit crimes after escaping from federal custody. He asserts, however, that the criteria for denying the reduction -- focusing on the maximum sentence that could have been received, rather than that actually received -- is not a rational means of accomplishing that purpose. We disagree.

As stated, an offense committed after an escape is a legitimate factor to consider in imposing a sentence for that escape; and, obviously, the seriousness of the offense plays a most significant role in that consideration. Offenses considered for § 2P1.1(b)(3) purposes are not only federal, but also state and local. Federal facilities, such as the one from which Mendiola escaped, are located in States and localities which classify offenses, and provide different punishment ranges, based on individual, localized determinations of the seriousness of such offenses. Accordingly, in determining whether a defendant who escapes from non-secure federal custody should receive an offense-

---

[6]    *See* **United States v. Sherrod**, 964 F.2d 1501, 1512 (5th Cir. 1992) (citing **Plyler v. Doe**, 457 U.S. 202 (1982)) ("Because defendants' situation does not implicate either a suspect classification or the exercise of a fundamental right, the different treatment ... is subject only to rational basis analysis."), *cert. denied*, ___ U.S. ___, 113 S. Ct. 1422 (1993).

level reduction under the Guidelines, it is not irrational to focus on the maximum sentence that could have been received (an indicator of the considered seriousness of the offense), rather than that actually received.[7]  "It is not irrational for Congress to defer to state law with regard to the characteristics of a prior offense, and doing so is no more intentionally arbitrary than our system of federalism itself."  *United States v. Lender*, 985 F.2d 151, 156 n.* (4th Cir. 1993) (rejecting equal protection challenge to 18 U.S.C. § 924(e)(2)(B), Armed Career Criminal Act's definition of "violent felony" as "any crime punishable by imprisonment for a term exceeding one year").

---

[7]     Numerous Guideline sections look to the maximum possible sentence, rather than the sentence imposed.  For example, *see* § 2J1.6 (containing identical exception to offense level reduction for failure to report to halfway house); § 2K1.3(b)(3) & comment. (n.4) (providing for offense level increase if defendant used or possessed explosive material in connection with another felony offense; commentary defines felony offense as "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained"); § 2K2.1 & comment. (n.7) (providing for offense level increase if defendant used, possessed, or transferred firearm or ammunition in connection with another felony offense; commentary defines felony offense as "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained"); § 4A1.2(o) (defining "felony offense", for purpose of determining sentences to be counted in computing criminal history score under § 4A1.2(c), as "any federal, state, or local offense punishable by death or a term of imprisonment exceeding one year, regardless of the actual sentence imposed"); § 4B1.2(1) (defining "crime of violence" for career offender guidelines as "any offense under federal or state law punishable by imprisonment for a term exceeding one year" that involves use or threatened use of force); and § 7B1.1 p.s. (classifying probation and supervised release violations on the basis of possible sentence under federal, state, or local law, rather than on basis of actual sentence imposed).

B.

While acknowledging that his due process contention essentially duplicates that for equal protection, Mendiola adds that § 2P1.1(b)(3) violates due process because it requires the district court to rely on unreliable information in sentencing, and does not allow the court an opportunity to correct unreliable uses of maximum theoretical sentences. For the reasons stated above, we reject this contention. The punishment ranges established by state or local authorities for crimes committed within their jurisdictions are not unreliable.[8]

III.

For the foregoing reasons, Mendiola's sentence is

**AFFIRMED.**

---

[8]    The Guidelines authorize the district court to depart downward if it finds "`that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0, p.s. (quoting 18 U.S.C. § 3553(b)). Whether downward departure was an option was not raised either in the district court, or on appeal (except for reference to it by Mendiola's lawyer in rebuttal at oral argument; he stated, among other things, that if it were allowed, it would cure his due process objection to the Guideline). Accordingly, we do not address its application *vel non*. *See, e.g.*, **United States v. Cisneros-Garcia**, 14 F.3d 41 (10th Cir. 1994); **United States v. Weaver**, 920 F.2d 1570 (11th Cir. 1991).