# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 2, 2021

Lyle W. Cayce
Clerk

No. 20-11027

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

PEDRO REBULLOZA,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
No. 4:19-CR-362

Before HIGGINBOTHAM, SMITH, and HO, *Circuit Judges*.
JERRY E. SMITH, *Circuit Judge*:

Pedro Rebulloza appeals a 240-month sentence after pleading guilty of conspiring to possess methamphetamine ("meth") with intent to distribute. Rebulloza charges the sentencing court with two forms of error. First, he says the court applied the Sentencing Guidelines to his conduct incorrectly. Second, he says the court imposed a substantively unreasonable sentence. We find no error and affirm.

I.

Less than a year after being paroled from a Texas state prison,

No. 20-11027

Rebulloza traveled from Fort Worth to Los Angeles to purchase meth on behalf of his brother's drug-trafficking ring. Along with two co-conspirators, Rebulloza bought 45 pounds of meth and brought it to Fort Worth. He then worked with his brother and others to distribute the meth in Texas.

A government informant purchased meth from the ring. That informant's testimony produced arrest warrants for Rebulloza and numerous co-conspirators. Rebulloza was charged with conspiracy to "possess with intent to distribute a mixture and substance containing a detectable amount of Methamphetamine, a Schedule II controlled substance" under 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C). Rebulloza pleaded guilty of the charged offense without a written plea agreement. He did so because he was charged with conspiracy under a statute carrying a maximum penalty of 20 years[1] when he could have been charged under a statute carrying a maximum of 40 years.[2]

Rebulloza stipulated that he and his brother "on one occasion worked together receiving and distributing methamphetamine in the Northern District of Texas." He admitted to having his "own methamphetamine customer." He explained that he shared a meth supplier with his brother and that they "conspired with each other and others to possess methamphetamine with the intent to distribute it."

The conclusions of the presentence investigation report ("PSR") were largely based on a DEA investigation report, which in turn was largely based on the testimony of one of the co-conspirators. That co-conspirator explained that she traveled to Los Angeles alongside Rebulloza. She planned to fly with him but missed the flight and, instead, met Rebulloza at the meth

---

[1] 21 U.S.C. § 841(b)(1)(C).

[2] 21 U.S.C. § 841(b)(1)(B).

No. 20-11027

supplier's house. She testified that Rebulloza gave the supplier an unknown amount of money and transported an unknown portion of the 45 pounds to Fort Worth by bus and ride-share service.

The PSR further explained that Rebulloza was present during the sale of 1.006 kilograms ("kilos") of meth that was later analyzed by the DEA and found to be 99% pure. Since that meth was more than 80% pure, it is considered "ice" under the Sentencing Guidelines.[3] The PSR also attributed to Rebulloza "four to five" additional deliveries of around a kilo of meth each. It "conservative[ly] estimate[d]" the total quantity transported in those deliveries at 3 kilos.

Adding up those instances, the PSR attributed to Rebulloza 23.4 kilos of meth and 1.006 kilos of ice. Because it was a jointly undertaken criminal activity, that total holds Rebulloza accountable for the full 45 pounds (20.4 kilos) of meth that he and two others transported from Los Angeles to Fort Worth.[4] The PSR calculated these drug totals to be worth 66,920 kilos of converted drug weight using the relevant Sentencing Guidelines drug conversion table.[5]

A converted drug weight between 30,000 and 90,000 kilos corresponds to a base offense level of 36. U.S.S.G. § 2D1.1(c)(2). The PSR added a two-level enhancement under U.S.S.G. § 2D1.1(b)(5) because the meth was imported from Mexico. That in turn produced an adjusted offense level of 38.

---

[3] U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 2D1.1(c), cmt. C (U.S. Sent'g Comm'n 2018).

[4] *See* U.S.S.G. § 1B1.3(a)(1)(B).

[5] U.S.S.G. § 2D1.1(c), app. 8(D). One gram of meth equates to 2 kilos of converted drug weight. *Id.* One gram of "ice" equates to 20 kilos of converted drug weight. *Id.*

No. 20-11027

The PSR also identified five convictions that were relevant to determining Rebulloza's criminal history category under the guidelines. The PSR identified a criminal history category of VI, the highest category possible. *See* U.S.S.G. § 5A. Although the guidelines recommend 360 months to life imprisonment for an offense level of 38 and a criminal history category of VI, the offense of which Rebulloza pleaded guilty carries a maximum of 240 months. 21 U.S.C. § 841(b)(1)(C). So, the PSR calculated the guideline term of imprisonment to be 240 months.

In response to Rebulloza's objections, the Probation Office filed an addendum, which made two material changes. First, it recommended that Rebulloza receive a three-level reduction for acceptance of responsibility. Second, it increased the converted drug weight attributable to Rebulloza from 66,920 to 477,824 kilos. The Probation Office later explained that that change resulted from imputing the purity of the analyzed sample of meth to all the drugs attributable to Rebulloza. It explained that because drug seizures from the same trafficking ring "resulted in a confirmation of high-purity" meth, the district court could "reasonably conclude that the historical methamphetamine" attributable to Rebulloza was "also of high purity." That inference allows for the calculation of what the guidelines call "methamphetamine (actual)" rather than just "methamphetamine." *See* U.S.S.G. 2D1.1(c).[6]

Under the addendum's analysis, Rebulloza's base offense level is 38 because the converted drug weight now exceeds 90,000 kilos. The PSR addendum applied the two-level enhancement for possessing imported meth and the three-level reduction for acceptance of responsibility to reach an

---

[6] Like "ice," the conversion rate for "methamphetamine (actual)" is 1 gram to 20 kilos of converted drug weight. U.S.S.G. § 2D1.1(c), app. 8(D).

adjusted offense level of 37. That didn't change the PSR's calculation of the guideline term of imprisonment because an offense level of 37 combined with a criminal history category of VI also produces a recommended sentencing range of 360 months to life, which is still above the statutory maximum of 240 months. U.S.S.G. § 5A; 21 U.S.C. § 841(b)(1)(C).

At the sentencing hearing, Rebulloza had four remaining objections to the PSR and its addenda. First, he objected to the way the PSR calculated his criminal history category. Second, he objected to the sentence enhancement for possessing imported meth, saying he did not know the drugs were imported. Third, Rebulloza said he should not be responsible for all the drugs transported from Los Angeles to Fort Worth. Fourth, he objected to the addendum's calculation of converted drug weight by imputing the sample purity to all the attributed meth. Rebulloza also separately moved the court for a downward variance from the guideline range, urging that he was merely a drug courier, which he said merited a mitigating-role adjustment under U.S.S.G. § 3B1.2.

The district court overruled each of these objections. The court adopted the recommendations of the amended PSR and determined the offense level to be 37 and the criminal history category to be VI. That again produced a recommended sentencing range of 240 months because of the statutory maximum. The court also declined to vary the sentence downward based on a mitigating role.

The district court sentenced Rebulloza to 240 months' imprisonment and three years of supervised release. It explained that the sentence was appropriate because Rebulloza participated in "one of the largest methamphetamine rings to ever be charged in the Northern District of Texas." The court repeatedly noted that the government had been "very generous" in charging Rebulloza. The court observed that the charging decision made

No. 20-11027

Rebulloza eligible for a maximum far below the penalties some of his co-conspirators received. It suggested that the court could have "rejected the plea agreement . . . to avoid any unwarranted sentencing disparities."

Against these aggravating factors, the court weighed Rebulloza's acceptance of responsibility, his history of drug addiction, his renunciation of his prior gang affiliation, his decision to raise children that were not biologically related to him, his role in the conspiracy, the time between his illegal conduct and his arrest, and seven character letters that were submitted on his behalf. The court concluded that 240 months was sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a). The court even explained that if its "guideline calculations are later determined to be incorrect this is still the same sentence [it] would have imposed otherwise based on the factors" in § 3553(a).

On appeal, Rebulloza renews three of his arguments concerning the application of the guidelines. First, he says the importation enhancement should not apply because the government did not prove he knew the meth was imported. Second, he says the court should have granted him a mitigating-role adjustment. Third, he says the court erred by accepting the PSR's attribution of the quantity of drugs for which Rebulloza is accountable. Rebulloza also contends that 240 months is a substantively unreasonable sentence for his conduct.

## II.

Each of Rebulloza's arguments that the district court misapplied the Sentencing Guidelines fails because any supposed error was harmless. The guidelines are merely advisory. *See United States v. Booker*, 543 U.S. 220, 244 (2005). A sentencing court is required only to "take [the guidelines] into account," using them as "the starting point and the initial benchmark" for the sentence. *Id.* at 264; *Gall v. United States*, 552 U.S. 38, 49 (2007). The

court must independently determine that its sentence complies with the purposes of § 3553(a). *See Rita v. United States*, 551 U.S. 338, 347–48 (2007).

Federal Rule of Criminal Procedure 52(a) provides that an error "that does not affect substantial rights must be disregarded." Accordingly, a "procedural error during sentencing is harmless if 'the error did not affect . . . the sentence imposed.'"[7] An error does not affect the sentence when "the proponent of the sentence convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing."[8] This requires "evidence in the record that will convince this court that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error."[9]

Such evidence is ample here. Most importantly, the district court explicitly said it would have imposed the same sentence even if its guidelines calculations were wrong. But that's not all. The district court repeatedly referenced the government's "very generous" charging decision and the resulting intra-conspiracy sentencing disparities. The court also observed that Rebulloza was part of "one of the largest methamphetamine rings to ever be charged in the Northern District of Texas." These repeated "comment[aries] on the seriousness of the offense" provide "affirmative evidence that

---

[7] *United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).

[8] *United States v. Leontaritis*, 977 F.3d 447, 452 (5th Cir. 2020) (quoting *United States v. Ibarra-Luna*, 628 F.3d 712, 713–14 (5th Cir. 2010)), *cert. denied*, No. 20-1614, 2021 WL 4733314 (Oct. 12, 2021).

[9] *United States v. Stanford*, 823 F.3d 814, 845 (5th Cir. 2016) (quoting *United States v. Groce*, 784 F.3d 291, 296 (5th Cir. 2010)) (alterations adopted).

[the district court] had a particular sentence in mind."[10]   After noting the seriousness of the offense, the court independently found that the statutory maximum penalty was necessary to achieve the goals of § 3553(a).  That evidence convincingly demonstrates that the court would have imposed a 240-month imprisonment for the same reasons it previously gave, notwithstanding any claimed error.

We therefore decline to vacate Rebulloza's sentence based on any supposed error in calculating the appropriate offense level.

III.

Rebulloza also claims his 240-month sentence is substantively unreasonable.  He asserts that the district court "failed to give appropriate weight to the sentencing factors enumerated in 18 U.S.C. § 3553(a)."  He says the court ought to have considered the character letters submitted on his behalf, his childhood, his renunciation of his gang affiliation, and his decision to raise children not biologically related to him.  Moreover, he avers that his sentence is substantively unreasonable insofar as it relies on a distinction between "ice" and "methamphetamine" because all modern meth is pure enough to be considered ice, which results in disparate sentences among defendants responsible for similar conduct based entirely on whether the government tested its purity.

We review the substantive reasonableness of a sentence for abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  We must give "due deference to the district court's" weighing of the § 3553(a) factors.  *Id.*  Rebulloza offers nothing to overcome that deference.  His complaints about factors the district court ought to have considered are meritless because the

---

[10] *Id.* (quoting *United States v. Malone*, 809 F.3d 251, 260 (5th Cir. 2015)).

court *did* consider them, explicitly and on the record. His contentions amount to a request that we re-weigh the sentencing factors, which we cannot do. *United States v. Hernandez*, 876 F.3d 161, 167 (5th Cir. 2017).

Rebulloza's final notion based on the purity of modern meth is baffling. He offers no authority to support it, nor even a theoretical reason why it is a problem. We can find none.

The sentence was reasonable in response to Rebulloza's extensive criminal history and the size of the meth conspiracy. Accordingly, the judgment of sentence is AFFIRMED.