# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 21, 2024

Lyle W. Cayce
Clerk

_____

No. 23-30149

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Clarence Santiago,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CR-31-1

_____

Before Higginbotham, Smith, and Higginson, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Clarence Santiago and his coconspirators were selling marihuana out of a hotel room. Late one night, a few of their recent buyers decided to come back with guns and rob them. But the sellers were armed too. So, when the buyers returned to the hotel room, they began a shootout, and three of the thirteen involved were shot—none fatally.

The police arrived, stopped Santiago, and arrested him. He confessed to his involvement and eventually pleaded guilty to four separate charges.

After obtaining new counsel and reviewing the presentence investi-

gation report ("PSR"), Santiago moved to withdraw his plea, contending that the PSR recommended improperly punishing him for attempted first-degree murder. The district court sentenced Santiago to 360 months. The parties dispute whether the court's oral explanation included a cross-reference to attempted second-degree murder under U.S.S.G. § 2A2.1(a)(2), but they agree that the court upwardly varied the sentence because of the shooter's danger to hotel guests.

On appeal, Santiago raises a bevy of challenges to his plea and sentence. We discern no reversible error related to the plea. But the district court erred in calculating the guideline range, so we vacate and remand for resentencing.

## I.

Santiago and his coconspirators rented rooms 1514 and 1509 of the Jung Hotel in New Orleans to sell and store marihuana, respectively. Late at night, Chris Ross and his three associates came to 1514 and bought marihuana. Ross, his three associates, and two others they invited planned to return that night and rob the sellers at gunpoint. Either they did not know, or they did not care, that the sellers too were armed.

After midnight, Ross and the others arrived back at the hotel with semi-automatic handguns, and, when the door to 1514 opened, a shootout began. Ross and the would-be robbers fled down the hall to the elevators, continuing to fire back erratically. During that firefight, three of the thirteen participants were shot, one by friendly fire, but none fatally.

Once the would-be robbers had escaped into the elevator, Santiago and the other sellers moved the guns and drugs to 1509 and then attempted to abscond before the police could arrive. The hotel's security cameras caught nearly the entirety of the encounter and its aftermath.

No. 23-30149

Shortly thereafter, Santiago, as the last to leave, was accosted by the police at the front of the hotel and arrested after a brief foot chase. In custody, he waived his rights and admitted that he had been using the hotel rooms "to illegally store and package marijuana and to store multiple firearms." When the police later examined the scene, they determined that the two groups had fired over 80 shots inside the hotel. Luckily, though, not a single shot hit an innocent hotel guest.

The government indicted Santiago on four counts related to drug trafficking and firearms usage.[1] Represented by counsel, he pleaded guilty without a plea agreement. During his rearraignment, Santiago confirmed that he (1) understood the charges against him and (2) had read, reviewed, and understood the factual basis and that it accurately described his actions.

In computing Santiago's offense level, the PSR considered not only the crimes of which he had pleaded guilty; it also asserted that he had committed attempted first-degree murder of his six would-be robbers. With that, the U.S.S.G. § 2A2.1 first-degree murder cross-reference applied through U.S.S.G. § 2K2.1 and § 2X1.1(c), and Santiago's guideline range increased by several years.[2]

---

[1] (1) Conspiracy to Possess Firearms in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(o); (2) Use, Carry, Brandish, and Discharge of Firearms in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A) and (2); (3) Conspiracy to Possess with the intent to Distribute a Controlled Dangerous Substance, to wit: marihuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) and § 846; and (4) Maintaining a Drug-Involved Premises, in violation of 21 U.S.C. § 856(a).

[2] The PSR applied U.S.S.G. § 2A2.1 and § 3D1.2 to give Santiago 33 Base Offense Level points for shooting at each of his would-be robbers and an additional four points because a bullet hit one of them—though the PSR never confirmed that Santiago had fired that bullet. Then, the PSR added five more points under U.S.S.G. § 3D1.4 for the other groups (attempted murder of each of his five uninjured would-be robbers). Thus, the Combined Adjusted Offense Level was 42. The court also granted a three-point downward adjustment for acceptance of responsibility. So, the PSR calculated Santiago's Total

With his new counsel, Santiago moved to withdraw his guilty plea, claiming he had been unaware that unindicted crimes and alleged crimes not admitted to in the factual basis would enhance his sentencing range. Specifically, he took issue with the consideration of attempted first-degree murder in setting the offense level. He asserted that he had never been apprised of the possibility of a sentence enhancement based on an unindicted murder allegation and that, even if such consideration were otherwise proper, the factual basis supported a claim of self-defense.

The government responded by characterizing Santiago as merely "dissatisfied with his guidelines as determined by the United States Probation Office" and as attempting to abuse the system by moving to withdraw "only after he had an opportunity to review and consider his guidelines." The government focused on Santiago's and his coconspirators' having "repeatedly discharged their firearms at other rival drug dealers in an attempt to kill them." Further, in the government's view, because there were injuries, Santiago was responsible for everything that *might have* happened, not just for defending himself. Similarly, *had* a hotel guest been killed, the government *could have* charged Santiago and his associates with violating 18 U.S.C. § 924(j)(1)—a death-penalty-eligible crime—so the PSR properly counted firing the weapons as attempted first-degree murder.[3]

---

Offense Level at 39. As he had no criminal history, the PSR gave him a Criminal History category of I, and his Guideline range was 262 to 327 months. That factored in the mandatory, consecutive 120-month sentence for the § 924(c) firearms offense.

[3] The Probation Office's response to Santiago's challenge suggested that, if the court determined Santiago had not engaged in attempted first-degree murder, his Total Offense Level would be 33, with a sentencing range of 135–168 months for Counts 1, 3, and 4, along with the mandatory 120-month consecutive sentence for Count 2. Santiago characterizes this alternative calculation, and we agree, as still sentencing him for attempted second-degree murder.

No. 23-30149

At sentencing, the court denied Santiago's motion to withdraw his guilty plea, then "declin[ed] to make a specific finding . . . as to the relationship between the firearm cited in the indictment and the other offense of attempted first-degree murder." In other words, the district court accepted some of Santiago's objection to the PSR. But, as the court's statement of reasons explained, the court still applied U.S.S.G. § 2A2.1(a)(2) and only "changed [the] base offense level" to 27.[4] Thus, the guidelines recommended imprisonment of 255 to 288 months.

Because of the "shocking and disturbing" nature of the crimes, however, the court departed from that range, varying the sentence upward by six years. Specifically, the court imposed 240 months' imprisonment for Counts 1 and 4 and 60 concurrent months for Count 3. Then the court imposed a consecutive sentence of 120 months for Count 2.

On appeal, Santiago challenges the court's acceptance of his plea, its sentencing procedures, and his sentence.

## II.

Santiago's flock of challenges implicates several different standards of review, depending on whether he has preserved the objection. The most relevant standard we will apply is plain error.

Where a party has not preserved an alleged error, we review for plain

---

[4] The "base offense level of 27" with a Total Offense Level of 33 appears to match the Probation Office's response. We understand this to mean the district court found that Santiago had committed "Assault with Intent to Commit Murder" constituting not-first-degree murder. U.S.S.G § 2A2.1(a). The court must have also found that the injury to Ross's associate Everson's arm and shoulder was "permanent or life-threatening" instead of "serious" or between serious and life-threatening. U.S.S.G § 2A2.1(b)(1). Further, the district court must have declined to group the assaults against each robber under U.S.S.G. § 3D1.2. Finally, it increased the Offense Level by five because of the six groups.

error. "To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction."[5] Where the "purposes of the preservation requirement are met—namely, the defendants 'raised a claim of error with the district court in such a manner so that the district court may have corrected itself and thus, obviated the need for our review,' we conclude that the issue has been sufficiently preserved."[6]

If, though, a party raises objections for the first time on appeal or did not otherwise preserve them, we review for plain error.[7] To prove plain error, Santiago must show "that (1) there is an error; (2) the error is clear and obvious; and (3) the error affects his substantial rights."[8] Then, once he has shown that error, we may choose to correct the error *only* if (4) it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."[9] "Meeting all four prongs is difficult, 'as it should be.'"[10]

## III.

Santiago appeals (1) the acceptance of his guilty plea as Rule 11 error, (2) the district court's sentencing procedures, and (3) his sentence. Because

---

[5] *United States v. Torres-Perez*, 777 F.3d 764, 767 (5th Cir. 2015) (quoting *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009)).

[6] *Id.* (cleaned up) (quoting *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009)).

[7] *United States v. Alvarado-Casas*, 715 F.3d 945, 953 (5th Cir. 2013) (citing *United States v. Oliver*, 630 F.3d 397, 411 (5th Cir. 2011)).

[8] *United States v. Castro-Trevino*, 464 F.3d 536, 541 (5th Cir. 2006) (citing *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001) (en banc)).

[9] *United States v. Olano*, 507 U.S. 725, 736 (1993) (alteration in original) (internal quotation and citation omitted).

[10] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)).

the district court improperly sentenced Santiago by cross-referencing attempted murder under U.S.S.G. § 2A2.1, we reach only the first two claims.

## A.

Santiago alleges two errors under Federal Rule of Criminal Procedure 11: (1) that the district court failed to explain the elements of the four offenses of which he pleaded guilty and (2) that the factual basis was insufficient to prove his guilt on Counts Two and Four. He raises both claims for the first time on appeal, so we review only for plain error. *See Marek*, 238 F.3d at 315.

To prevail on a Rule 11 plain-error claim, Santiago must satisfy the four prongs of *Olano*. On both challenges, Santiago cannot clear that high bar. Therefore, we affirm his conviction.

### 1.

Santiago asserts that, when "the district court summarized the indictment but did not advise [him] of the elements of any of the offenses to which he was pleading guilty," the court committed "clear, obvious error." But Rule 11 does not require the district court to explicate the specific elements of each charge. The court must only "inform the defendant of . . . the *nature* of each charge to which the defendant is pleading." FED. R. CRIM. P. 11(b)(1)(G) (emphasis added). Although "there are no precise guidelines as to what is sufficient to meet this standard, 'the court must have a colloquy with the defendant that would lead a reasonable person to believe that the defendant understood the nature of the charge.'"[11]

---

[11] *United States v. Rivas*, No. 21-50921, 2022 WL 3226622, at *1 (5th Cir. Aug. 10, 2022) (per curiam) (unpublished) (quoting *United States v. Reyes*, 300 F.3d 555, 559 (5th Cir. 2002)).

At Santiago's rearraignment, where he was represented by counsel, the court explicitly broke down each charge to which he was pleading guilty. It explained that "Count 1 . . . charges you with conspiracy to possess firearms in furtherance of a drug trafficking crime"; that "Count 2 . . . charges you with carrying, brandishing, and discharging firearms in furtherance of a drug trafficking crime"; that "Count 3 . . . charges you with conspiracy to possess with the intent to distribute a controlled dangerous substance"; and that "Count 4 . . . charges you with maintaining a drug-involved premises." Santiago responded that he understood each charge. Further, after it stated each count in plain English, the court laid out the basic facts underlying that count. Then, the court explained the maximum sentences each count carried. Santiago, yet again, confirmed he understood the possible sentences.

That colloquy was sufficient for any "reasonable person to believe that the defendant understood the nature of those charges." *Rivas*, 2022 WL 3226622, at *1 (cleaned up). Therefore, Santiago has not shown any Rule 11 error, much less plain error.

Santiago also asserts that Count 2 was ambiguous as to whether he had been indicted as a principal or as an aider and abettor and that the court's colloquy improperly incorporated that ambiguity. Because "[t]hose two theories of guilt require proof of wholly distinct elements and mandate different evidentiary showings[,]" Santiago asserts, he could not have knowingly and voluntarily pleaded guilty to Count 2. We reject that challenge, too.

Aiding and abetting is a theory of liability implicit in every federal indictment and is not a distinct substantive crime.[12] Therefore, any ambiguity in Santiago's plea colloquy is irrelevant. Santiago knew the charges

---

[12] *United States v. Diaz*, 941 F.3d 729, 741 (5th Cir. 2019) (quoting *United States v. Turner*, 674 F.3d 420, 442 (5th Cir. 2012)).

against him, and he offers no caselaw to support his contention that the court was required to distinguish between those two possible theories of liability. Nor does he suggest he would not have pleaded guilty had the court clarified which theory applied to him. Santiago's failure along either path of this fork would suffice for us to reject his plain-error challenge. [13] Instead of picking a tine, we "take it."[14]

2.

We turn to Santiago's challenge to the factual basis underlying his guilty plea to Counts Two and Four.

For Count Two, Santiago pleaded guilty of "Us[ing], Carry[ing], Brandish[ing] and Discharg[ing] of Firearms in Furtherance of a Drug Trafficking Crime" in violation of 18 U.S.C. § 924(c). He contends that because the factual basis did not establish that he fired any weapons, his plea to Count Two was insufficient.

For Count Four, Santiago pleaded guilty of "Maintaining a Drug-Involved Premises" in violation of 21 U.S.C. § 856. Because the record is unclear as to who rented rooms 1514 and 1509, or for how long they had rented them, he asserts he had not "maintained" a premise as required for Count Four.

Well-established law confirms common sense—that a defendant "pleaded guilty . . . is not itself sufficient to support [a] guilty plea." *Marek*, 238 F.3d at 314. Instead, Rule 11 "requires the district court to determine that the *factual* conduct to which the defendant admits is sufficient *as a matter*

---

[13] *See United States v. Baez-Adriano*, 74 F.4th 292, 302 (5th Cir. 2023) (quoting *United States v. Andaverde-Tiñoco*, 741 F.3d 509, 523 (5th Cir. 2013)).

[14] *See United States v. Castillo-Rivera*, 853 F.3d 218, 232 & n.1 (5th Cir. 2017) (en banc) (Smith, J., dissenting)

*of law* to constitute a violation of the statute." *Id.*[15] Thus, we must review the facts underlying each count.

### a.    Count Two

Santiago advocates that the factual basis never established that he "knowingly used, carried, and discharged a firearm 'during and in relation to' his participation in the marijuana conspiracy." Therefore, under Rule 11(b)(3), the district court must have erred by accepting his plea.

"We may consider the entire district court record in assessing whether there was a sufficient factual basis to support [Santiago's] guilty plea."[16] The record must confirm that Santiago (1) was engaged in a drug trafficking crime; (2) (a) "during and in relation to" that crime, "used or carried a firearm, or (b) in furtherance of that crime, possessed a firearm"; and (3) "discharged" the firearm. 18 U.S.C. § 924(c)(1)(A)(iii) (cleaned up). That he was engaged in a drug trafficking crime is not in question, so the dispute turns on only the two remaining elements.

First, Santiago suggests the factual basis does not support an inference that he ever discharged a firearm. Second, he submits that even if he did, the record does not prove that he did so "in relation to" the conspiracy. Third, he avers that, on the theory of aiding and abetting, the factual basis does not establish that he had "advance knowledge that a confederate would use or carry a gun during the crime's commission" as required by *Rosemond v. United States*, 572 U.S. 65, 67 (2014).

---

[15] *See also* FED. R. CRIM. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.").

[16] *United States v. Hicks*, 958 F.3d 399, 401 (5th Cir. 2020) (citing *United States v. Ortiz*, 927 F.3d 868, 873 (5th Cir. 2019)); *see also Trejo*, 610 F.3d at 313 (citing *United States v. Tullos*, 356 F. App'x 727, 727–28 (5th Cir. 2009)).

None of Santiago's contentions overcomes the record evidence. The factual basis to which he admitted states that "[d]uring the attempted robbery, the *seven occupants* of Room 1514 immediately returned gunfire." It explicitly describes Santiago as one of those *occupants*. Then, it explains that "[a] shootout between the six individuals [i.e., Ross et al.] and the *occupants* of the room [i.e., Santiago and his coconspirators] began." Additionally, it explains that, during the shootout, "the *occupants* of Room 1514 continued to discharge their firearms . . . ." Then, the hotel videos of the encounter show Santiago making several trips between Rooms 1514 and 1509, putting several bags and a rifle into Room 1509. Further, the police concluded that the two groups fired over 80 shots during the shootout. Finally, and most damningly, the factual basis ends with Santiago's admitting that he and his coconspirators "used" the guns "to protect their drugs and drug proceeds" and that the *occupants* of Room 1514 "fired multiple times at the assailants."

Although Santiago may not have expressly stated he fired a weapon, his admissions certainly came close. When accepting a plea, the court may make common-sense inferences from the evidence, including the factual basis.[17] Further, carrying a gun "for protection . . . honors the Congressional concerns manifested by the 'in relation to' element."[18] Thus, Santiago presents no reason to contradict the district court's implicit inferences that (1) as an occupant, Santiago was one of the "occupants" returning fire; (2) that when over 80 shots were fired, each person involved in that shootout fired a weapon; and (3) that they did all of that "during and in relation to" the sale of marihuana. Whether that was an error is questionable, but on

---

[17] *See United States v. Jones*, 75 F.4th 502, 508 (5th Cir.) ("The supporting facts may include . . . 'fairly drawn inferences from the evidence . . . .'" (quoting *United States v. Trejo*, 610 F.3d 308, 319 (5th Cir. 2010)), *cert. denied*, 144 S. Ct. 515 (2023).

[18] *United States v. Harris*, 477 F.3d 241, 245 (5th Cir. 2007).

plain-error review, it certainly was not a "clear and obvious error." Therefore, we decline to disturb Santiago's plea to Count Two.

### b.    Count Four

Santiago raises a stronger theory about the meaning of the law on Count Four. He contends that "rent[s], use[s], or maintain[s]" in 21 U.S.C. § 856(a)(1) requires more than mere presence for one night and involvement in a drug trafficking crime. But he relies entirely on the established interpretation of "maintain" without explaining why "use" does not suffice.

For purposes of § 856, the word "'maintain' 'connotes a degree of continuity and duration.'" *United States v. Barnes*, 803 F.3d 209, 216 (5th Cir. 2015) (quoting *United States v. Morgan*, 117 F.3d 849, 857 (5th Cir. 1997)). Santiago correctly asserts that the factual basis does not support a charge of "maintaining" the hotel rooms, as it proves nothing more than that he occupied the rooms for one night, with no clarification of whether he had any kind of dominion over them. *See id.* (citing *United States v. Soto-Silva*, 129 F.3d 340, 346 (5th Cir. 1997)).

But Santiago's factual basis includes an admission that he "used" the hotel rooms. Therefore, we could determine that the district court committed plain error only if we effectively read out "use" from the statute, giving it the same meaning as "maintain." But "use" "cannot be meaningless, else [it] would not have been used."[19] Further, reading out "use" would make a mockery of Congress's decision to add it to a statute that already included "maintain."[20] Such an action would not comport with our limited

---

[19] *Calumet Shreveport Refin., L.L.C. v. EPA*, 86 F.4th 1121, 1138 (5th Cir. 2023) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012)).

[20] *See* Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 (Protect Act), Pub. L. No. 108–21, § 608, 117 Stat 650, 691 (2003)

judicial role, and we decline to rewrite the statute.

Santiago points to three cases—*United States v. Guzman-Reyes*, 853 F.3d 260 (5th Cir. 2017), *Barnes*, and *Dubin v. United States*, 599 U.S. 110 (2023)—that allegedly support his position that we give "use" and "maintain" the same meaning. But none bears that weight.

First, *Guzman-Reyes* dealt with sentencing under a sentencing guideline, not 21 U.S.C. § 856. *See* 853 F.3d at 263–64. And the guideline with which it dealt, U.S.S.G. § 2D1.1(b)(12), employs the word "maintain[]," not "use." We could plausibly extend its thoughtful analysis of "maintain" to another case in which the meaning of that word was at issue, but we cannot—and do not—read that case to express a preference for "maintain" over "use" in every context.

Second, in *Barnes* we unambiguously declined to rule on whether the defendants "maintained" a drug-involved premise. *See* 803 F.3d at 216. Instead, we applied aiding-and-abetting liability to uphold the convictions. *Id.*[21] That renders *Barnes* completely inapplicable in determining the meaning of "use."

Third, *Dubin* explains that "'use' takes on different meanings depending on context." 599 U.S. at 118 (cleaned up). So, we must "look not only to the word itself, but also to the statute and the surrounding scheme, to determine the meaning Congress intended." *Id.* (cleaned up). Instead of supporting Santiago's recommendation that we give "use" no meaning, *Dubin* contradicts it. As the Court instructs, we must apply *noscitur a sociis*

---

(updating 21 U.S.C. § 856).

[21] Though we do not base our ruling on this similarity, the district court could have found that Santiago aided and abetted whichever of his coconspirators rented the rooms—thereby meeting § 856's "renting" element. *See Barnes*, 803 F.3d at 216–17.

to understand "use" as akin to, but with a meaning different from, "open, lease, rent, . . . or maintain." 21 U.S.C. § 856(a)(1); *see Dubin*, 599 U.S. at 124–27. Using a hotel room for the night as a storefront for illegal drugs is precisely the type of "use" Congress included in that language that would not already be covered by "open," "lease," "rent," or "maintain."

In conclusion, Santiago offers no on-point caselaw on "use," and we have not, nor has the government, found any precedent applying "use" or explaining how long-term a "temporary" "use" must be under § 856(a)(1) to qualify. Yet, Santiago has the burden to show the error, and any error is not plain where a possible and plausible interpretation has not been foreclosed by precedent.[22] Thus, the district court's application of "temporary use" to an overnight hotel-room-cum-storefront cannot be plain error.[23] Santiago's Rule 11 challenges fail.

## B.

Santiago raises three challenges to the district court's calculation of his sentencing guideline range. First, he avers the court never performed the requisite guideline calculations, or it at least failed to explain them. Second,

---

[22] *See Puckett*, 556 U.S. at 135 (Plain error requires "some sort of deviation from a legal rule." (cleaned up)); *Trejo*, 610 F.3d at 319 ("An error is not plain under current law if a defendant's theory requires the extension of precedent." (internal quotation marks and citation omitted)); *United States v. Broussard*, 669 F.3d 537, 550 (5th Cir. 2012) (citing *Puckett*, 556 U.S. 129).

[23] Even had Santiago established that the district court committed error by accepting his plea on Count Four, we have two independent reasons for which we would still affirm. First, the error was harmless: Santiago received an identical, concurrent sentence on Count One. *See United States v. Valdez*, 726 F.3d 684, 697–98 (5th Cir. 2013). Second, Santiago has not shown that he would not have pleaded guilty had the agreed-upon factual basis been clearer or had the court made the desired additional findings. Though we mention these only as alternative rationales, Santiago's failure to overcome either of those bars would also defeat his claim of plain error.

he contests the factual findings underlying those calculations. Third, he alleges legal error, claiming that the court improperly applied the attempted-murder cross-reference and the guidelines' grouping rules. We disagree with his first challenge but agree with the second, so we do not reach the third.

We review preserved objections to a district court's calculation and application of the guidelines *de novo* and its findings of fact for clear error. *See Torres-Perez*, 777 F.3d at 768 (citing *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008)). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (per curiam) (citation omitted). If the challenge is raised for the first time on appeal, though, we review for plain error. *United States v. Johnson*, 943 F.3d 735, 737 (5th Cir. 2019) (citing *United States v. Lopez-Velasquez*, 526 F.3d 804, 806 (5th Cir. 2008)).

The parties dispute how many of those challenges, if any, Santiago raised in the district court. Santiago contends that, by objecting to the first-degree murder cross-reference and asking for a downward variance, he put the court on notice of his request that "the court . . . comply with its obligation to calculate and consider the correct Guidelines range . . . ."[24] The government responds by claiming that, when the district court refused to apply the first-degree-murder cross reference, the court fully addressed Santiago's objections; thus, he needed to raise additional objections to preserve any issue for appeal.

At sentencing, the court denied Santiago's motion to withdraw his guilty plea. The court explained that it had already considered his objections

---

[24] Indeed, Santiago objected to "any mention of murder or attempted murder" and specifically raised that "the factual basis . . . provides for a self defense argument of an attempted murder charge" in his motion to withdraw his guilty plea.

in its calculation of the guideline range and that its calculations did not include a finding that Santiago had attempted first-degree murder. At that point, the court was aware of, and had overruled, Santiago's objection to the characterization of his actions as attempted murder of any degree.[25] Therefore, Santiago's objection to the attempted-murder cross-reference was raised and addressed by the district court.

Yet, when the district court later queried whether either party had anything further to ask, Santiago declined to object to the court's explanation of its findings and calculation. Without an objection, the court had no inkling that Santiago believed the explanation was insufficient or that the court had not made the requisite factual findings. Thus, Santiago failed to alert the court to that potential issue with the necessary specificity required for the identification and correction of the alleged error. *United States v. Salazar*, 743 F.3d 445, 448 (5th Cir. 2014) (citing *Mondragon-Santiago*, 564 F.3d at 361).[26]

We agree that Santiago properly presented the "crux of his objection" regarding attempted murder to the district court. *United States v. Bravo*, 852 F. App'x 790, 794 (5th Cir. 2021) (per curiam) (quoting *United States v. Nesmith*, 866 F.3d 677, 679 (5th Cir. 2017)). And, insofar as he raised his objection in writing, he did not also need to object orally to that error. *See United States v. Medina-Anicacio*, 325 F.3d 638, 642 (5th Cir. 2003) (citing

---

[25] *See United States v. Mendiola*, 42 F.3d 259, 260 n.2 (5th Cir. 1994) (The purpose of the plain error rule is served where "[t]he essential substance of the objection is obvious and was made known to the district court."); *see also id.* (Where "counsel [is] entitled to believe that further explanation would not be welcomed or entertained by the district court . . ., the objection was adequate to preserve the issues for review." (citation omitted)).

[26] *See also Mondragon-Santiago*, 564 F.3d at 361 ("He could have asked the district court for further explanation during the sentencing hearing, but did not.").

*Bender v. Brumley*, 1 F.3d 271, 277 (5th Cir. 1993)).  But Santiago did not properly object to the court's explanation of its findings and calculations.  Therefore, we review (1) Santiago's challenge to the explanation for plain error and (2) his challenge to the cross-referencing for clear error as a factual finding.

1.

Santiago characterizes the district court as having neither considered nor determined the guideline range, suggesting that the court made no factual findings at all before sentencing him.  The government retorts that Santiago has taken the court's statements out of context and that the court explicitly adopted the PSR and its addendum for the court's findings of fact.  Then, the government explains, the court applied those findings to calculate the offense level and his criminal history category, which generated the guideline range.

"[F]ailing to calculate . . . the Guidelines range" is a "significant procedural error" that constitutes an abuse of discretion in sentencing.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  But the transcripts support the government's position:  The district court calculated the range as required.

With a caveat about Santiago's objection to the consideration of first-degree murder, the district court expressly adopted the PSR and its addendum as its findings of fact.  Then, it applied the recommended Total Offense Level of 33 to craft the guideline range.  Considering that range, the court explained its upward variance, calling "[t]he facts of this case . . . stunning and horrific."  It did all of that in a few brief sentences, and we agree with Santiago that the court could have explained its process more clearly.  But, on plain-error review, it is not "clear or obvious" that the court fell short of *Gall*'s requirements by not explaining the findings of fact, its application of the guidelines, or its calculation of the range.  Further, Santiago has made no showing that that limited discussion would seriously affect the fairness, integrity, or public reputation of judicial proceedings.  Therefore, we reject

Santiago's challenge to the explanation of the sentence and its calculation.

2.

Santiago preserved his challenge to the district court's determination that he attempted second-degree murder. So, we review, for clear error, the district court's application of the U.S.S.G. § 2K2.1(c)(1)(A) cross-reference to U.S.S.G. § 2A2.1.

On clear-error review, we accept the "trial court's factual findings if they are plausible in light of the record, even though we might have weighed the evidence differently if we had been sitting as a trier of fact." *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1116 (5th Cir. 2021) (cleaned up). But "sentencing facts must be established by a preponderance of the evidence."[27] An error is clear "if a review of the record results in a 'definite and firm conviction that a mistake has been made.'"[28]

Section 2A2.1 of the guidelines defines first-degree murder by reference to 18 U.S.C. § 1111. *See* U.S.S.G. § 2A2.1 cmt. n.1. That guideline does not define non-first-degree murder, though. Without clearer guidance, we continue to look to § 1111, which defines "[a]ny other murder" that was not, *inter alia*, "deliberate, malicious, [or] premeditated" or committed as part of other specified crimes, as "murder in the second degree." 18 U.S.C. § 1111(a).

Self-defense is an affirmative defense to a charge of murder under

---

[27] *United States v. Johnson*, 648 F.3d 273, 277 (5th Cir. 2011) (citation omitted); *see also United States v. Luna-Gonzalez*, 34 F.4th 479, 480 (5th Cir. 2022) (citing *United States v. Abrego*, 997 F.3d 309, 312 (5th Cir. 2021)).

[28] *Zuniga*, 720 F.3d at 590 (quoting *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011)).

§ 1111 that "negates the[] elements of criminal behavior."[29]  The initial burden of production rests on the defendant asserting self-defense, but once the defendant has met that burden, the government must then provide proof to "negate" it. *Branch*, 91 F.3d at 714 n.1 (citation omitted).

> To meet that burden of production, Santiago must present
>
> evidence that (1) he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct; (3) he had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; and (4) a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.[30]

The video and the factual record unequivocally show that Ross and his crew attempted to rob Santiago at gunpoint.  Thus, Santiago easily meets the first, third, and fourth criteria.

The second criterion presents a closer question.  That Santiago was selling drugs and carrying significant weaponry might suggest that he had "recklessly or negligently placed himself" into that situation.  But "engaging

---

[29] *Moran v. Ohio*, 469 U.S. 948, 955 (1984) (Brennan, J., dissenting from denial of certiorari); *see United States v. Branch*, 91 F.3d 699, 714 (5th Cir. 1996) ("It is true, as a general proposition, that self-defense . . . [is an] affirmative defense[] to both murder and voluntary manslaughter."); *see also McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) ("Self-defense is a basic right, recognized by many legal systems from ancient times to the present . . . .").

[30] *United States v. McGee*, No. 93-7503, 29 F.3d 625 (table), 1994 WL 395111, at *6 (5th Cir. July 8, 1994) (unpublished but precedential per 5TH CIR. R. 47.5.3) (cleaned up). *See also Andersen v. United States*, 170 U.S. 481, 508 (1898) (collecting cases).

in unlawful conduct . . . does not, by itself, constitute provocation . . . ." *Branch*, 91 F.3d at 718. Thus, we treat the second criterion more akin to a prohibition against "provok[ing] a fight and then rely[ing] on a claim of self-defense when that provocation results in a counterattack . . . ." *Id.* at 717 (internal quotation marks and citation omitted). Yet, the government has pointed to no evidence, and on our independent review, we see no part of the record or of the videos that suggests Santiago provoked Ross. Ross and his crew came with guns drawn to rob Santiago and his fellow dealers. Their reaction very well might have been self-defense.

Santiago met his burden of production, but the district court never sought, and the government never attempted to provide, proof to rebut his self-defense claim. From this review, we find ourselves with a "definite and firm conviction that a mistake was made" by the district court where it cross-referenced attempted murder without considering self-defense. *Zuniga*, 720 F.3d at 590 (cleaned up). Therefore, that was clear error.[31]

Further, the district court's error was not harmless. "To establish harmlessness, the government must convincingly demonstrate that the court would have imposed the very same sentence if it had not made an erroneous calculation." *Torres-Perez*, 777 F.3d at 768 (internal quotation marks and citation omitted).[32] But harmless error is a "heavy burden" that the govern-

---

[31] We do not suggest that every time a defendant asserts self-defense as an objection to a sentence, the district court must hold an evidentiary hearing before ruling on it. *Cf. United States v. Hebert*, 813 F.3d 551, 554 (5th Cir. 2015) (The court held a "detailed four-day hearing where it found that Hebert had committed second degree murder in connection with the bank fraud counts."). But the record must, in some way, support the court's declination of that defense if the defendant raises it. This record does not.

[32] *See also United States v. Rebulloza*, 16 F.4th 480, 484 (5th Cir. 2021) ("A procedural error during sentencing is harmless if the error did not affect the sentence imposed." (cleaned up)).

ment cannot carry here. *United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012) (citation omitted).

First, the government has not alleged harmlessness. Second, even had it done so, we would reject the claim. The district court varied Santiago's sentence upward by six years from the top of the guideline range. That brought the sentence in line with the PSR's recommended sentence for attempted first-degree murder. According to Santiago, had the court not considered any murder allegation, his properly calculated range would have been 130–136 months. The record does not support any claim—and we doubt—that the district court would have imposed a sentence nearly three times greater than the guideline range, even after an upward variance for the danger posed to unsuspecting hotel guests. Further, the court never declared its intention to impose the same sentence regardless of any guideline-calculation error. As the burden is on the government to make that harmless-error showing, and because it could not convincingly do so on this record, we decline to dismiss this error as harmless.

* * * *

In summary, the district court properly accepted Santiago's well-supported and well-explained plea agreement. It also explained its calculations and application of the guidelines sufficiently to survive plain-error review. But by applying the attempted-murder cross-reference without considering that Santiago acted in self-defense, the court committed clear error.

The conviction is AFFIRMED. The sentence is VACATED, and we REMAND for resentencing. We express no view on the sentence that the court should announce on remand.

Stephen A. Higginson, *Circuit Judge*, concurring:

I concur in all but Part III(B)(1) of the opinion. Respectfully, I read the record differently with regard to the district court's explanation and guidelines calculation. At sentencing, the district court stated that Santiago "objected to the final presentence investigation report arguing that the calculations should not cross-reference to the charge of attempted murder because the acts alleged do not and would not constitute first degree murder." Hr'g Tr. at 6:24-7:5, *United States v. Santiago*, 21-00031, ECF 156 (E.D. La. Mar. 7, 2023). The district court then explained that, while it had "reviewed both the response of the probation officer and that of the Government," the "sentence was crafted . . . without making that finding," and "declin[ed] to make a specific finding at this time as to . . . attempted first degree murder" because it did not "find it to be necessary to the decision [it] made with reference to the defendant's sentence today." *Id.* at 7:4-14. In response to Santiago's objection to the attempted murder cross-reference in the presentence investigation report, the district court stated, "I'm not going to make that determination; but in effect, your objection is moot based upon the way I've crafted defendant's sentence, okay." *Id.* at 7:17-20. But in the written statement of reasons that followed, the district court did the opposite and expressly relied on a cross-reference to attempted second-degree murder, albeit with a typo in the referenced guidelines provision. Statement of Reasons, *United States v. Santiago*, 21-00031, ECF 133 (E.D. La. Mar. 14, 2023).

Inconsistencies and failures to explain at sentencing are particularly troubling in this context, where a defendant is sentenced for conduct that is uncharged and unadjudicated. And even more so here, where the district court denies the defendant's request to withdraw his guilty plea after learning this sentence may be based on uncharged and unadjudicated conduct, yet then does not take, test, and resolve evidence, even to a preponderance

standard of proof, to confirm that conduct. *See United States v. Hebert*, 813 F.3d 551, 554 (5th Cir. 2015). Notably, the eventual upward variance substantially exceeded the sentence recommended by either Probation or the Government. Our decision today vacating and remanding for resentencing will allow the district court to fully explain the sentence given, based on clearly determined guidelines calculations as well as specific, preponderance findings of fact.