# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50056

United States Court of Appeals
Fifth Circuit

**FILED**
September 10, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

       Plaintiff–Appellee,

versus

JOSE GUADALUPE TORRES-MAGANA,

       Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, DENNIS, and HAYNES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Jose Torres-Magana pleaded guilty of conspiracy to possess with intent to distribute five kilograms or more of cocaine. He appeals, contending that the district court clearly erred in enhancing his sentence under U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2D1.1(b)(15)(A) (U.S. SENTENCING COMM'N 2016).[1] Finding no clear error, we affirm.

---

[1] This section has been renumbered as § 2D1.1(b)(16)(A) effective November 1, 2018, but the language has not changed.

No. 18-50056

I.

Torres-Magana led a drug-trafficking organization that delivered cocaine across the country. He and his wife, Patricia Torres, met with a man in October of 2016 to arrange cocaine deliveries. That man was an undercover federal agent.

Almost two months later, Torres-Magana called his stepson, Alfonso Govea, Jr. (hereinafter "Govea"), and asked Govea to meet with him and Mrs. Torres, Govea's mother. When they met, Mrs. Torres demanded that Govea meet with the agent. But Govea refused because "he knew it was something illegal" and wanted nothing to do with it. Displeased, Torres-Magana and Mrs. Torres argued with Govea.

Just a few days later, Torres-Magana again tried to solicit Govea. He called Govea and told him that he had "an emergency" and needed to take Mrs. Torres to a cancer treatment appointment. He asked Govea to deliver a box of cocaine that he had left outside Govea's house. He implored Govea, stating that he had "never asked anything" from him and that he and Mrs. Torres would otherwise have delivered the box themselves. Again, Govea refused, driving to Torres-Magana's house and arguing further with the couple about their attempts to involve Govea in the illegal delivery. But at long last, the stepson agreed to deliver the box of cocaine.

Though Govea was reluctant to participate in the drug delivery, he was involved in other ways with the drug organization. Indeed, he and Mrs. Torres co-owned businesses that laundered the drug proceeds.

Torres-Magana was arrested and pleaded guilty of conspiracy to possess cocaine with intent to distribute it, in violation of 21 U.S.C. §§ 846 & 841(a)(1). Among other enhancements, the revised presentence investigation report ("PSR") recommended a two-level enhancement under § 2D1.1(b)(15)(A),

2

No. 18-50056

because Torres-Magana had "used fear, impulse, friendship, affection, or some combination thereof" to involve Govea in the controlled-substance offense. The PSR pointed out that Torres-Magana had argued with Govea "on several occasions while trying to convince him to participate in one of [his] drug-trafficking ventures." What's more, Torres-Magana had pressured Govea to participate by telling him that Torres-Magana needed to take Mrs. Torres (Govea's mother) to a cancer treatment appointment instead of delivering the box of cocaine himself. And "there [wa]s no indication Govea[] received compensation for his participation, nor that he had knowledge of the scope and structure of the enterprise."

Torres-Magana objected to an enhancement under § 2D1.1(b)(15)(A). He averred that the evidence did not suggest that Govea had only minimal knowledge of the drug enterprise's scope and structure—even if Govea concededly had "minimal involvement" with it. Instead, the evidence supported the inference that Govea "was, at best, willfully blind" to the details of the drug enterprise. Surely Govea would not have been entrusted to deliver a box of a large amount of cocaine alone and unsupervised if Govea lacked "substantial knowledge" of the underlying enterprise. Torres-Magana also vaguely referenced Govea's co-ownership of a business with Govea's mother, Mrs. Torres. And Torres-Magana asserted that an enhancement was unwarranted because "no one received remuneration from this particular shipment."

The district court overruled Torres-Magana's objection and applied the enhancement. The court noted that it could rely on the PSR in deciding whether the enhancement applied and that Torres-Magana had refused to put on any evidence outside of what was already in the record.

Based on an offense level of 35 and a criminal-history category of I, the guidelines recommended 168 to 210 months' imprisonment. After considering

3

No. 18-50056

Torres-Magana's presentation, the guidelines, and the 18 U.S.C. § 3553(a) factors, the court sentenced Torres-Magana to 172 months.[2]   Torres-Magana objected to "each of the defense objections that the [c]ourt overruled" and "to the overall sentence in light of [18 U.S.C. §] 3553."  Torres-Magana appeals, contending that the district court clearly erred in imposing the enhancement.

## II.

"Because [Torres-Magana] preserved [his objections to the enhancement] in the district court, we review the application of the Guidelines *de novo* and the district court's factual findings—along with the reasonable inferences drawn from those facts—for clear error." *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013).  Under that deferential clear-error standard, "a sentencing court's factual findings will be upheld if they are plausible in light of the record as a whole, and they will be deemed clearly erroneous only if a review of all the evidence leaves this court with the definite and firm conviction that a mistake has been committed." *United States v. Richard*, 901 F.3d 514, 516 (5th Cir. 2018) (internal quotation marks omitted).

Thus, even if we "would have weighed the evidence differently," we will not set aside—so long as they are plausible—the district court's factual findings. *United States v. Harris*, 434 F.3d 767, 773 (5th Cir. 2005) (internal quotation marks omitted).  Indeed, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

## A.

Under § 2D1.1(b)(15)(A), a district court may enhance a base offense

---

[2] The court also noted that even if it had miscalculated the guidelines, it would have rendered the same sentence.  It reasserted as much in its written statement of reasons.

No. 18-50056

level by two levels if the defendant received a leadership-role enhancement under U.S.S.G. § 3B1.1 and (1) "the defendant used fear, impulse, friendship, affection, or some combination thereof to involve another individual in the illegal purchase, sale, transport, or storage of controlled substances"; (2) "the individual received little or no compensation from the" offense; and (3) "the individual had minimal knowledge of the scope and structure of the enterprise." U.S.S.G. § 2D1.1(b)(15)(A).[3] "The government must prove sentencing enhancements by a preponderance of the evidence." *United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010).

In deciding whether to apply an enhancement, district courts may adopt information in the PSR. *See United States v. Gomez-Alvarez*, 781 F.3d 787, 796 (5th Cir. 2015). "As a general rule, information in the [PSR] is presumed reliable and may be adopted by the district court without further inquiry if the defendant fails to demonstrate by competent rebuttal evidence that the information is materially untrue, inaccurate[,] or unreliable." *Id.* (internal quotation marks omitted). "The defendant bears the burden of demonstrating that the information is materially untrue[,] and if the defendant fails to offer rebuttal evidence[,] the sentencing court is free to adopt the information without further inquiry." *Id.* (internal quotation marks omitted) (cleaned up). The court generally should not consider a defendant's unsworn objections and argumentation "in making its factual findings." *United States v. Alfaro*, 919 F.2d 962, 966 (5th Cir. 1990).[4]

---

[3] *See generally United States v. Aguilar-Alonzo*, No. 18-50627, 2019 U.S. App. LEXIS 25856 (5th Cir. Aug. 27, 2019).

[4] *See also United States v. Gutierrez-Mendez*, 752 F.3d 418, 429 (5th Cir. 2014) (explaining that neither "[s]elf-serving statements" nor "mere objections to the PSR" are "competent rebuttal evidence"); *United States v. Rodriguez*, 602 F.3d 346, 363 (5th Cir. 2010) ("Because no testimony or other evidence was submitted to rebut the information in the PSR,

No. 18-50056

B.

Torres-Magana challenges the district court's findings on each prong of the § 2D1.1(b)(15)(A) enhancement.  He does not challenge, however, that he received a leadership-role enhancement under § 3B1.1.

First, Torres-Magana contends that the district court improperly found that he used fear, impulse, friendship, affection, or some combination thereof to involve Govea—his stepson—in the controlled substance offense.  On that point, he contends only that the court incorrectly "found" that Govea was Torres-Magana's son—instead of his *step*son.

Second, he maintains that the government has "failed to show that had [the drug delivery] been successful, Govea[] would still not have benefited" from the delivery.  He points out that "*no one* received any remuneration from this transaction," given that the government intercepted the cocaine.

Third, Torres-Magana avers that Govea had more than "minimal knowledge" of the drug enterprise's scope because (1) Govea ran and co-owned businesses through which he laundered the drug proceeds; (2) he "did not have to be lured or intimidated into being a member of th[e] enterprise"; (3) he "clearly had extensive knowledge of the workings of th[e] enterprise"; and (4) the PSR determined that his role was not mitigating.  Torres-Magana's contentions are not persuasive.

1.

The district court properly found that Torres-Magana used his familial relationship with Govea—his stepson—to pressure him and involve him in the offense.  Indeed, the record is full of evidence that Govea wanted nothing to do

the district court was free to adopt the PSR's findings without further inquiry or explanation.").

No. 18-50056

with the cocaine delivery and that Torres-Magana used their relationship to overcome Govea's opposition.

Initially, Torres-Magana invited Govea to a meeting where Mrs. Torres demanded that Govea meet with (someone whom the couple did not realize was) an undercover agent. Govea refused, stating that he did not want to participate in illegal activity. Unmoved, Torres-Magana and Mrs. Torres argued with Govea about his refusal to get involved.

Not to be deterred, Torres-Magana later called Govea and told him that he had an emergency and needed to take Govea's mother to a cancer treatment appointment. No doubt playing on Govea's concern for his mother, he asked Govea to deliver to the agent a box of cocaine he had dropped off at Govea's house. He counseled that he had "never asked (Govea) for anything" and that, were it not for the emergency appointment, he would have delivered it anyway. Govea continued to push back, choosing to go to Torres-Magana and Mrs. Torres's house to argue with them instead of immediately delivering the box. But Torres-Magana eventually overcame Govea's spirited resistance. In the end, Govea did his stepfather's bidding—he delivered the cocaine.

That evidence supports the finding that Torres-Magana used fear, impulse, friendship, affection, or some combination thereof, to involve Govea in the offense.[5] The district court did not clearly err.

---

[5] Torres-Magana also avers that the district court erroneously "found" that Govea was Torres-Magana's *son*, instead of his stepson. But even if it were true that the court made such a finding, under the plain language of the enhancement, it would not matter. *See* U.S.S.G. § 2D1.1(b)(15)(A). The enhancement applies to the defendant's use of "fear, impulse, friendship, affection, or some combination thereof." *Id.* Whether the district court assumed that Govea was Torres-Magana's *son* or *step*son, the inquiry is the same: Did Torres-Magana use "some combination" of "fear, impulse, friendship, (or) affection" to involve Govea in the offense? *Id.* For the reasons described above, the answer is yes, and the district court did not clearly err in concluding as much.

No. 18-50056

2.

The record reveals nothing to suggest that Govea received compensation for participating in the offense. Indeed, the PSR reports that "there is no indication Govea[] received compensation for his participation." In response, Torres-Magana does not proffer any evidence not already included in the PSR, so the district court was "free to adopt" information in the PSR. *See Gomez-Alvarez*, 781 F.3d at 796. At a minimum, we cannot say that it is *implausible* that Govea received no compensation.[6] Thus, the district court did not clearly err in determining that Govea was not paid for his role in the offense.[7]

3.

Torres-Magana's strongest claim for clear error is that Govea had more-than-minimal knowledge of the drug-trafficking enterprise's scope and structure. Torres-Magana points out that Govea had a distinct role in the organization: He "launder[ed] the drug proceeds through businesses he and his mother own[ed]." So, Govea "clearly had extensive knowledge of the workings of th[e] enterprise." Although Torres-Magana's reasoning is colorable, under clear-error review we must uphold the findings if they are plausible in view of the whole record. *Richard*, 901 F.3d at 516.

The findings meet that deferential standard. Outside of the fact that Govea owned businesses that laundered the drug proceeds, Torres-Magana offers only conclusional statements—bereft of supporting evidence—that Govea "clearly had extensive knowledge of the workings of th[e] enterprise." The PSR concluded that Govea did not have knowledge of the structure and

---

[6] *See Richard*, 901 F.3d at 516 (district court's factual findings are clearly erroneous only if they are not "plausible").

[7] Torres-Magana appears to contend that the government cannot establish the compensation prong because *no one* profited from the drug delivery. But that makes little sense. If anything, it implicitly shows that Govea was not compensated.

sheer scope of an organization that sent drugs nationwide, including to Chicago and Columbus. Yet once again, Torres-Magana responds not with cognizable testimony or affidavits but with mere argument. Thus, we cannot say that the findings as to Govea's lack of knowledge are implausible. The court did not clearly err.

AFFIRMED.